United States District Court
Southern District of Texas
**ENTERED**
June 01, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| RONICA MARSHALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:22-CV-00028 |
| | § | |
| KILOLO KIJAKAZI, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Plaintiff Ronica Marshall brought this action on August 11, 2022 seeking review of the Commissioner's final decision determining she was not disabled. (Case No. 6:22-mc-28, D.E. 1). On January 12, 2023, Plaintiff filed a Brief, construed as a Motion for Summary Judgment. (D.E. 12). On March 30, 2023, Defendant filed a Brief, construed as a Cross Motion for Summary Judgment. (D.E. 16). For the reasons below, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED**.

## I.    JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). This case has been referred to the undersigned pursuant to 28 U.S.C. § 636.

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The burden has been described as more than a scintilla but lower than a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citation omitted).  A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present.  However, the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted); *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.") (citation omitted).

In evaluating a disability claim, the Commissioner follows a five-step process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment

meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work.  *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995) (citations omitted).  The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step who must show that, in light of claimant's Residual Functional Capacity ("RFC"), claimant can perform other substantial work in the national economy.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

## III.    PROCEDURAL BACKGROUND

Plaintiff filed an application for benefits on October 16, 2019 at age 53, alleging disability as of June 28, 2018, due to hypothyroidism, knee problems, "8 Screws in Lower Back," and osteoporosis in her lower back.  (D.E. 9-1, Pages 106-108, 126-127 and 324). Plaintiff has a high school education and past work experience as a purchasing agent.  (D.E. 9-1, Pages 33, 61, 283 and 325-326).

After Plaintiff's applications were denied initially and upon reconsideration, at Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on September 9, 2021, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.  (D.E. 9-1, Pages 56-157 and 201).  The ALJ issued an unfavorable decision on November 3, 2021, finding Plaintiff not disabled from June 28, 2018, the alleged onset date, through the date of the decision.  (D.E. 9-1, Pages 14-44).

The Appeals Council declined Plaintiff's request for review on June 21, 2022, making the ALJ's November 3, 2021 decision final.  (D.E. 9-1, Pages 6-11, 278-280 and

436).   Plaintiff then filed this action on August 11, 2022, seeking review of the Commissioner's final decision.

## IV.   ISSUES PRESENTED

Plaintiff first alleges the ALJ's RFC determination was deficient because he failed to properly consider the opinion of Dr. William Crowley, specifically whether Plaintiff requires the use of a cane and whether Dr. Crowley's opinion is supported by his treatment records as well as consistent with Plaintiff's reported daily activities, subjective complaints and other medical evidence.  (D.E. 12, Pages 14-20).  Plaintiff also asserts the ALJ did not adequately consider her work history.  (D.E. 12, Pages 20-21).

## V.   HEARING TESTIMONY AND THE ALJ'S DECISION

At the September 9, 2021 hearing, Plaintiff testified she completed high school, had been working for 27 years and was a supervisor for the past 12 years as a purchasing agent at an oil, gas and plastics company.   (D.E. 9-1, Pages 61-64 and 71).  Plaintiff also testified she stopped working when management "asked [her] to transfer over.  There was a position come open and they asked me to transfer from the plastics side over to the oil and gas side." (D.E. 9-1, Page 71).  She then testified she stopped working "[b]ecause it got to a point where I couldn't tolerate the pain any longer.  My back was hurting me so bad and having to take pain medication every day.  And I just got to the point where I just wasn't able to function like I should."  (D.E. 9-1, Pages 71-71).  Plaintiff described pain in her lower back and in both of her hips and having to take medication which made her very tired at work each day.  (D.E. 9-1, Pages 72-73).  She further testified she did not have full mobility in

her leg, had continuously swelling in her knee and needed to use a cane daily to keep from

falling, including inside her home.  (D.E. 9-1, Pages 73-75).  Plaintiff also testified she

used the cane in her non-dominant hand and that without her cane, she could stand for 15

minutes and with her cane, she could walk less than half a block.  (D.E. 9-1, Pages 74 and

76).  Additionally, Plaintiff testified she could sit for 20 minutes before having to walk

around for a few minutes and she had difficulty with balance.  (D.E. 9-1, Pages 76-77).

Plaintiff also testified she had left shoulder pain, limited mobility reaching over her head

with her left arm but could wash her own hair and could no longer drive because she has

to wear a fentanyl patch.  (D.E. 9-1, Pages 78-80).  Plaintiff further testified she could no

longer work because her mind was "not as sharp as it used to be, and with me having to sit

here and deal with the pain that I'm in on a daily basis, it's just taking a toll on me… I just

don't feel like I can perform like I used to."  (D.E. 9-1, Pages 80-81).  Plaintiff further

testified she would not be able to pass the drug test and would have stopped working even

if her employer had kept her in the same position.  (D.E. 9-1, Page 72).

Noting Plaintiff "has an excellent work history," the ALJ questioned the VE who

testified Plaintiff had transferable skills from her past relevant work to a sedentary level

position, including computer, supervisory, verbal, written, data analysis, time management,

record keeping and customer service skills in addition to inventory systems knowledge.

(D.E. 9-1, Pages 65-67).  The VE further testified that someone of Plaintiff's age, education

and work history who could do light work; could occasionally balance, stoop, kneel, crouch

and crawl; who could not climb ladders, ropes or scaffolds; could not reach overhead

bilaterally and could frequently reach in all other directions with the dominant upper extremity could perform Plaintiff's past work as generally performed and could further perform several other light jobs including administrative clerk, sales clerk, auto rental clerk and office helper.  (D.E. 9-1, Pages 67-69).  The VE also testified there were sedentary jobs with transferable skills including checker, telephone solicitor and receptionist.  (D.E. 9-1, Page 70).  The VE also testified that if the use of a cane for ambulation and balance was required, then Plaintiff would not be able to perform her past work as generally described or any of the light work but she could perform the sedentary positions as "there is very limited walking required in those jobs."  (D.E. 9-1, Pages 81-82).

On November 3, 2021, the ALJ determined Plaintiff had not engaged in substantial gainful activity since June 28, 2018.  (D.E. 9-1, Page 20).  The ALJ further determined Plaintiff had the following severe impairments:  status post left rotator cuff surgery, degenerative joint disease and osteoarthritis of the left knee, status post left knee arthroscopy, degenerative disc disease of the cervical and lumbar spines and bilateral hip osteoarthritis.  (D.E. 9-1, Pages 21-22).

The ALJ also determined Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment.  (D.E. 9-1, Page 22).  In relevant part, the ALJ determined Plaintiff's impairments did not meet or equal the severity requirements of listing 1.15 [Disorders of the skeletal spine result in compromise of a nerve root(s) or listing 1.18 [Abnormality of a major joint(s) in any extremity], both of which include consideration of hand-held assistive device.  (D.E. 9-1, Pages 22-23).

The ALJ concluded Plaintiff had the RFC to perform a limited range of light work. (D.E. 9-1, Page 24).  More specifically, the ALJ determined Plaintiff had the RFC to perform light work but she could not climb ladders, ropes or scaffolds; could occasionally balance, stoop, kneel, crouch and crawl; occasionally reach overhead, bilaterally; and could frequently reach in all other directions with her dominant upper extremity.  (D.E. 9-1, Page 24).

In reaching this determination, the ALJ considered Plaintiff's hearing testimony regarding her pain and resulting limitations, noting inconsistencies with the record.  For example, on November 26, 2019, Plaintiff reported she could:  perform light housework, including taking the trash out, sweeping the floor, doing laundry and making the beds; babysit for her grandchildren; take care of her pets with the help of her husband; take care of her own personal care without assistance; prepare food including sandwiches and frozen dinners; drive and ride in a car; could shop independently; pay bills and otherwise handle money; read; listen to music; watch television; visit with her children each week and talk on the phone.  (D.E. 9-1, Pages 341-45).  Plaintiff also reported she required the use of a cane; could lift ten pounds; could not squat, bend, or climb stairs because of her back and knee surgeries and she could walk for 50 yards before needing to rest ten minutes.  (D.E. 9-1, Page 345-46).  The ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in

the record for the reasons explaining in this decision." (D.E. 9-1, Page 25).  The ALJ then thoroughly detailed Plaintiff's treatment records for over a three-year period from 2018 to 2021.  (D.E. 9-1, Pages 26-30).  The ALJ also considered the state agency physicians' opinions as well as Plaintiff's treating physician, Dr. Crowley.  (D.E. 9-1, Pages 30-33).

The ALJ opined considered Dr. Crowley's August 12, 2021 treating source statement for physical condition, where Dr. Crowley opined Plaintiff required the use of an assistive device; could walk 50 to 100 feet without a cane; uses knee braces; could rarely reach in all directions and rarely handle, finger, feel, push/pull and use bilateral foot controls; could occasionally lift less than ten pounds and rarely lift ten pounds with no lifting of more than 20 pounds; could sit for two hours and stand for two hours and would need to lie down or recline one to two times a day for one to two hours and elevate her legs. (D.E. 9-1, Pages 32and 1473-1476).  The ALJ found this opinion "not persuasive and not fully supported by the record." (D.E. 9-1, Page 32).  Citing to Dr. Crowley's records from July 2021, a month before his assessment at issue, the ALJ noted as follows:

> Specifically, the physical exam [on July 10, 2021] showed she had a normal back inspection.  Muscle spasm and vertebral point tenderness and soft tissue tenderness were evident, but she exhibited normal range of motion of the extremities and no motor or sensory deficits were evident and with nontender extremities.  (D.E. 9-1, Page 1266).  The claimant was also stable and improving.  Her symptoms were much better, and she was given a muscle relaxer, fentanyl patch for 72 hours and Zofran for nausea for three days (D.E. 9-1, Pages 1265-66), and discharged home the same day with medications.  (D.E. 9-1, Page 1273).  At a follow up visiting with Dr. Crowley on July 19, 2021, the claimant requested a refill of Tylenol 4 for chronic back pain, because she stopped Olmesartan[1] due to side effects of headaches. (D.E. 9-1, Page 1338).  She was administered a Kenalog injection

---

[1]Olmesartan is a cardiac medication used to treat hypertension.  (D.E. 9-1, Page 1346).

for back pain. (D.E. 9-1, Page 1340). On May 25, 2021, the claimant reported that she fell over flowerpots and needed Tylenol and medication refill for generalized discomfort of right leg pain that began yesterday. (D.E. 9-1, Page 1342). However, x-rays showed no acute finding for right femur, mild degenerative changes of right knee, no acute fracture, two fixation screws noted in right sacroiliac joint, moderate degenerative changes of the right hip, and soft tissues grossly unremarkable. (D.E. 9-1, Page 1345). Thus, her symptoms from the fall are not durational. On May 17, 2021, the claimant was also noted to have a normal gait. (D.E. 9-1, Page 1348). For these reasons, the undersigned finds the opinion of Dr. William Crowley's physical assessment not persuasive and inconsistent with the record considered as a whole. In addition, his opinion is not supported by his own treatment notes or her activities of daily living, as mentioned above.

(D.E. 9-1, Page 32, 1261-1330 and 1335-1465).

The ALJ also considered Dr. Crowley's August 12, 2021 treating source statement

for psychological condition as follows:

Dr. Crowley reported that the claimant has been treated and diagnosed [with] abdominal pain, migraine headache, anxiety, depression, hypertension, hypothyroid, and vitamin B12 deficiency with a fair prognosis. Dr. Crowley also reported that there are mood disturbances with full or partial depressive syndrome, no bipolar, and no anxiety. (D.E. 9-1, Pages 1477-81). Dr. Crowley opined that the claimant could maintain concentration, persistent, or pace less than 30 minutes, which is not consistent with the mild rating for understanding and carrying out very short and simple instructions and mild limitations for short term memory. The rating for concentration persistent or pace was moderately limited, and there were no limitations working with the public, coworkers, and supervisors. Dr. Crowley also reported that the claimant would be off task 25% of the workday and absent greater than 4 days a month. (D.E. 9-1, Pages 1477-81).

The undersigned finds the opinion of Dr. Crowley unpersuasive, as he is not a specialist, such as a psychologist or psychiatrist, and there were no marked or extreme non-exertional limitations assessed. Further, there were no limitations working with the public, coworkers, and supervisors. In fact, the records do not show that the claimant has mental issues or a reason for her to be off task 25%, and her ratings are at most moderate. Records from Dr. Crowley also state that the claim has a negative mental health history. (D.E. 9-1, Page 1499). In fact, the claimant does not allege mental issues.

(D.E. 9-1, Page 33).

The ALJ then determined Plaintiff could perform her past relevant work as generally performed, referencing the VE's testimony that it is classified as light and skilled with a Specific Vocational Preparation ("SVP") of 7.  (D.E. 9-1, Pages 33-35).  The ALJ also made an alternative finding that in addition to past relevant work, Plaintiff, given her age, education and work skills acquired from past relevant work, could perform other jobs that exist in significant numbers in the national economy including:  administrative clerk, light and semi-skilled with a SVP of 4; salesclerk, light and semi-skilled with an SVP of 3; auto rental clerk, light and semi-skilled with an SVP of 4; gate guard, light and semi-skilled with an SVP of 3; checker, sedentary and semi-skilled with an SVP of 4; telephone solicitor, sedentary and semi-skilled with an SVP of 3; and receptionist, sedentary and semi-skilled with an SVP of 4.  (D.E. 9-1, Pages 34-35).  Noting the VE testified a person requiring the use of cane could perform only the sedentary positions listed above, the ALJ cited to the VE's testimony that "a person could perform sedentary work with a cane because the amount of standing and walking would not be the primary requirement and sedentary work is not inconsistent with use of a cane."  (D.E. 9-1, Page 37).  However, the ALJ stated she:

> did not include this limitation because the use of a cane appears to be more consistent with recovery from her knee surgery and not on a durational basis, despite her testimony that she used the cane daily, even in her home.  The treatment notes do not support the use of a cane, for a medical reason, other than after her knee surgeries, from which she has recovered and is noted to be doing well, no edema and she was driving, shopping in stores, doing light chores, and preparing meals, per the treatment notes in January 2020 after

her surgery earlier that month. On May 17, 2021, she was also noted to have a normal gait and had a flare of Raynaud's Syndrome that was resolving. (D.E. 9-1, Page 1348). So, there was no consistent use for a cane documented in the record. The record did not support the need to elevate her legs on a consistent basis, as her edema is noted to only be periodic in the record. There was no mention in the record of requirement for rest breaks or alternating sitting/standing, except on the MSS [Medical Source Statement] at [D.E. 9-1, Pages 1473-1481 by Dr. Crowley], which the undersigned finds is not supported by the doctor's own treatment notes or the claimant's activities of daily living.

The undersigned ultimately used occasional overhead reaching, bilaterally, and frequent reaching in all other directions with the dominant upper extremity in the established residual functional capacity. The undersigned did this based on the treatment notes at [D.E. 9-1, Pages 1228-1330], which were 2 to 3 months after her shoulder surgery and note pain level of 3 to 4 on a scale of 0 to 10 and while limited range of motion, indicates she is improving, and her strength was 4-/5 [D.E. 9-1, Pages 1235-37] which the musculoskeletal listings consider to be good strength. The vocational expert testified that the claimant would be able to do her past relevant work, as generally performed, with occasional overhead reaching, bilaterally and frequent reaching in all other directions. The undersigned finds the limitation to occasional overhead reaching is more consistent with the treatment notes and physical therapy notes, only a few months after the surgery, and her prognosis of being able to return to prior level of function with physical therapy that she was attending 3 times a week for 4 weeks [D.E. 9-1, Page 1245]. She is also noted to have done well after surgery.

(D.E. 9-1, Pages 36-38).

Therefore, the ALJ found Plaintiff was not disabled from June 28, 2018 through the date of the decision, November 3, 2021. (D.E. 9-1, Pages 38-39).

## VI.   DISCUSSION

Plaintiff first alleges the ALJ's RFC determination was deficient because she failed to properly consider the opinion of Dr. William Crowley, specifically whether Plaintiff requires the use of a cane and whether Dr. Crowley's opinion is supported by his treatment

records as well as consistent with the record as a whole.  (D.E. 12, Pages 14-20).  Plaintiff

also asserts the ALJ did not adequately consider her work history.  (D.E. 12, Pages 20-21).

An RFC is an assessment, based on all relevant evidence, of a claimant's ability to

do work on a sustained basis in an ordinary work setting despite impairments.  20 C.F.R.

§ 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) ("RFC involves both

exertional and non-exertional factors.")  RFC refers to the most a claimant is able to do

despite physical and mental limitations.  20 C.F.R. § 404.1545(a).  The ALJ must consider

all symptoms, including pain, and the extent to which these symptoms can be reasonably

accepted as consistent with objective medical evidence and other evidence.  *Wren v.*

*Sullivan,* 925 F.2d 123, 128 (5th Cir. 1991) ("Disabling pain must be constant, unremitting,

and wholly unresponsive to therapeutic treatment" and considerable deference is given to

an ALJ's determination of that pain's disabling nature) (citations omitted).  However, the

ALJ is not required to incorporate limitations in the RFC that are not supported in the

record.  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has

the sole responsibility for weighing the evidence…" (citation omitted).   "A claimant is not

entitled to Social Security disability benefits merely upon a showing that (s)he has a severe

disability.  Rather, the disability must make it so the claimant cannot work to entitle the

claimant to disability benefits." *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289,

at *9 (5th Cir. Aug. 19, 2005).  "The mere presence of some impairment is not disabling

per se.  Plaintiff must show that she was so functionally impaired by her [disability] that

she was precluded from engaging in any substantial gainful activity." *Id*. (citations

omitted); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (An "impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.")

Additionally, for all claims filed on or after March 27, 2017, ALJs are no longer required to give controlling weight to a treating physician's opinion as previously mandated. 20 C.F.R. § 404.1520c. Because Plaintiff filed her application for disability insurance benefits after this time, the new rule applies which provides the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a). Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the factors outlined in the rule, the most important of which are supportability[2] and consistency.[3] *Id.* at § 404.1520c(b)(2). While "[t]here have never been formalistic rules governing how an ALJ must articulate his decision, [a]t a minimum, the ALJ's explanation must permit meaningful judicial review" of the

---

[2] For supportability, the regulations state "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." 20 C.F.R. § 404.1520c(1).

[3] For consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative findings(s) will be." 20 C.F.R. § 404.1520c(2).

supportability and consistency factors. *Walsh v. Comm'r of Soc. Sec.*, No. 4:21-cv-552-O-BP, 2022 WL 2874710, at *5 (N.D. Tex. July 7, 2022) (citations omitted).[4]

As described above, Plaintiff's treating physician, Dr. Crowley completed a check the box Treating Source Statement-Physical Conditions on August 12, 2021 and opined Plaintiff required the use of an assistive device; could walk 50 to 100 feet without a cane; uses knee braces; could rarely reach in all directions and rarely handle, finger, feel, push/pull and use bilateral foot controls; could occasionally lift less than ten pounds and rarely lift ten pounds with no lifting of more than 20 pounds; could sit for two hours and stand for two hours and would need to lie down or recline one to two times a day for one to two hours and elevate her legs.  (D.E. 9-1, Pages 32 and 1473-1476).  The ALJ found this opinion "not persuasive and not fully supported by the record."  (D.E. 9-1, Page 32).

---

[4]Whether an ALJ's analysis constitutes a sufficient explanation of supportability and consistency is "whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof."  *Luckett v. Kijakazi*, No. 4:20-cv-4002, 2021 WL 5545233, at *3-4 (S.D. Tex. Nov. 26, 2021) (citation omitted) (Remanding case because the ALJ rejected not only the opinion of a treating physician for purposes of assessing the plaintiff's RFC but also rejected that same treating physician's underlying primary medical diagnosis that the plaintiff suffered from fibromyalgia based on an incorrect interpretation of the record).  An ALJ must articulate how supportability and consistency were considered.  *Howen v. Saul*, No. H-19-4358, 2021 WL 1169331, at *6-7 (S.D. Tex. Mar. 25, 2021) (While the ALJ stated he considered an opinion and then incorporated even more restrictive limitations into the RFC, the RFC was in fact not more limited than the suggested RFC and therefore, remand was appropriate).

However, these words need not be expressly used as the Fifth Circuit has held "[a] case will not be remanded simply because the ALJ did not use 'magic words.'"  *Ranson v. Comm'r of Soc. Sec.*, No. 4:21-cv-157-JMV, 2022 WL 2438840, at *4 (N.D. Miss. July 5, 2022) (citing *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) ("Remand is only appropriate 'where there is no indication the ALJ applied the correct standard'") (citation omitted).

While Plaintiff alleges she became disabled on June 28, 2018, due to hypothyroidism, knee problems, "8 Screws in Lower Back," and osteoporosis in her lower back, substantial evidence supports the ALJ's finding that Plaintiff is capable of performing her past relevant work as generally performed and, alternatively, a range of light and sedentary positions. 42 U.S.C. § 423(d)(1)(A) (Plaintiff must prove her physical or mental impairment prevents her from engaging in any substantial gainful activity for at least 12 months). The ALJ thoroughly discussed Plaintiff's treatment records and objective testing results from May 2018 through to August 2021 as well as Plaintiff's subjective complaints. (D.E. 9-1, Pages 17-39). As noted by the ALJ, Dr. Crowley's treatment records prior to his August 2021 opinion do not support the extensive functional limitations contained in his assessment. *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) (quoting *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (The Fifth Circuit has characterized a treating physician's responses to a questionnaire format, such as the one here, as the "typical brief or conclusory testimony" that ALJ may disregard when lacking "explanatory notes" or "supporting objective tests and examinations."); *Baker v. Kijakazi*, No. 3:21-cv-3126-BH, 2023 WL 2414011, at *14 (N.D. Tex. Mar. 7, 2023) ("District Courts in this circuit have found that under the new regulations, brief and conclusory opinions unsupported by relevant medical evidence lack supportability.") (citing *Stephens v. Saul*, No. 3:20-cv-823-BH, 2020 WL 7122860, at *8 (N.D. Tex. Dec. 4, 2020) (A brief and conclusory check-box questionnaire is less persuasive in comparison to a narrative statement, which contains substantive

explanation) (other citations omitted).  Further, the ALJ correctly noted Dr. Crowley's limitations were also not consistent with the record as a whole.

For example, the ALJ noted that on March 7, 2019, Plaintiff underwent left knee surgery without any complications to address her knee impairments.  (D.E. 9-1, Pages 23 and 914).  At her April 24, 2019 post operative follow up visit, Plaintiff reported left knee pain.  (D.E. 9-1, Page 498).  By July 19, 2019, Dr. Crowley noted Plaintiff was "[n]egative for arthralgias (joint pain), back pain, joint stiffness, limb pain and myalgias (muscle pain)."  (D.E. 9-1, Page 493).  Dr. Crowley again noted on September 5, 20 and 23 and October 9 and 22, 2019, that Plaintiff, who presented with complaints of abdominal pain, sore throat, an upper respiratory infection and a leg laceration after a fall, respectively, was "[n]egative for arthralgias, back pain, joint stiffness, limb pain and myalgias."  (D.E. 9-1, Pages 465, 469, 478, 481 and 484).  As noted by the ALJ, on October 28, 2019, Dr. Crowley reported Plaintiff had a "normal gait."  (D.E. 9-1, Pages 23 and 463).  Dr. Crowley also noted Plaintiff's left leg injury could "best be described as a simple abrasion of the left lower leg [occurring] after a fall."  (D.E. 9-1, Page 461).  He further noted "[p]ossible signs of infection include redness and increasing pain."  (D.E. 9-1, Page 461).  The same day, Plaintiff was admitted to the hospital for IV antibiotic treatment of cellulitis on her left leg due to the leg laceration.  (D.E. 9-1, Pages 453 and 609-14).  By October 31, 2019, Plaintiff was noted as "ambulating well without difficulty" and on November 1, 2019, Plaintiff was again noted as "ambulating well" and that her "would is healing well" and she was discharged.  (D.E. 9-1, Pages 614-16).  The ALJ also discussed treatment records from

November 11, 2019 where Dr. Crowley further noted Plaintiff had a "normal gait; full, painless range of motion of all major muscle groups and joints no laxity or subluxation of any joints." (D.E. 9-1, Page 459). Plaintiff was noted as using a single crutch on November 12, 2019, and having a left leg limp with a "supect[ed] retear of medial meniscus" and pain with range of motion on November 20, 2019, as well as being "[p]ositive for arthralgias, back pain, joint stiffness, limb pain, [and] myalgias." (D.E. 9-1, Pages 449, 450 and 455). Imaging of Plaintiff's left knee on November 18, 2019 showed complex retears in her meniscus and another knee surgery was recommended after her leg wound had completely healed. (D.E. 9-1, Page 444). However, as discussed by the ALJ, by December 5, 2019, Dr. Crowley noted Plaintiff again had a "normal gait" and was "[n]egative for arthralgias, back pain, joint stiffness, limb pain and myalgias." (D.E. 9-1, Pages 23-24, 438, 440 and 459).

Prior to her left knee surgery on January 9, 2020, Plaintiff was noted as walking independently and having no musculoskeletal limitations. (D.E. 9-1, Pages 583 and 588). Shortly after her surgery, as discussed by the ALJ, Dr. Arun K. Jain performed a consultative examination on January 15, 2020. (D.E. 9-1, Pages 1081-1090). He noted Plaintiff reported she had a history of mild to moderate lower back pain for the past 15 years "which gets worse with frequent bending, twisting, turning and climbing stairs" and after standing for 30 to 45 minutes. (D.E. 9-1, Page 1085). Plaintiff further reported the "pain [was] nonradiating [and] denie[d] any weakness, numbness, or tingling of the lower extremities." (D.E. 9-1, Page 1085). Plaintiff further reported that after her recent knee

surgery, she had mild to moderate knee pain which also got "worse with frequent bending, twisting, turning and climbing stairs" and after standing for 30 to 45 minutes.  (D.E. 9-1, Page 1085).   Dr. Jain noted Plaintiff had no muscle aches or weakness but that she ambulated with a cane and a limp and was unable to perform heel to toe walking and squatting, still having stitches and a dressing on her left knee.  (D.E. 9-1, Pages 1085-86).  Plaintiff's motor strength and tone were normal.  (D.E. 9-1, Page 1086).   Further, upon examination of both the thoracic and lumbar spine, there was no midline or paraspinal tenderness.  (D.E. 9-1, Page 1086).   Fine finger movements, grip strength and her ability to push/pull and grab were within normal limits and she had a full range of motion in her shoulders, elbows, ankles, wrists and thumbs.  (D.E. 9-1, Pages 1086 and 1090).   Dr. Jain opined Plaintiff's lower back pain was most likely due to degenerative disease of the lumbar spine and she also was assessed as having bilateral knee degenerative joint disease, status post recent left knee surgery and chronic untreated osteoporosis.  (D.E. 9-1, Page 1086).   As noted by the ALJ, the imaging ordered by Dr. Jain of Plaintiff's lumbar spine showed no evidence of acute hardware complication and no acute osseous findings.  (D.E. 9-1, Page 1087).   Further, imaging of Plaintiff's left knee showed "[m]oderate joint capsular distention [which was] [d]egenerative but no acute osseous findings." (D.E. 9-1, Page 1097).

On February, 4, 2020, Plaintiff was noted as being "[n]egative for back pain and limb pain…[having]a normal gait; grossly normal tone and muscle strength; [and] full, painless range of motion of all major muscle groups and joints." (D.E. 9-1, Pages 1211

and 1213-14).  The ALJ further noted that the next day, February 5, 2020, while Plaintiff reported severe knee pain, she was ambulating without an assistive device, could get up and down from a chair without assistance and she was reported as doing well postoperatively without only mild stiffness and the following week, on February 11, 2020, she had a "normal gait."  (D.E. 9-1, Pages 23-24, 1206, 1208 and 1210).  Plaintiff reported having lower back pain on March 4, 2020, made worse by walking or sleeping in a fixed position and was negative for arthralgias or myalgias with no weakness or numbness in her legs.  (D.E. 9-1, Page 1196).  Plaintiff was noted as having no tenderness in her cervical or thoracic region but having moderate tenderness in her lumbar region.  (D.E. 9-1, Page 1198).  It was further noted that Plaintiff had normal hip flexion, knee extension and ankle dorsiflexion.  (D.E. 1198).  At a postoperative left knee surgery follow up visit on March 6, 2020, Plaintiff reported she was "doing very well" with "good comfort and function." (D.E. 9-1, Page 1193).

Imaging on July 13, 2020 of Plaintiff's cervical spine imaging revealed minimal disc bulging at the C4-5 and C5-6 levels, uncovertebral arthrosis at C4-5 with mild bilateral foraminal stenosis; and uncovertebral arthrosis at C5-6 with moderate bilateral neural foraminal stenosis.  (D.E. 9-1, Pages 23 and 1100).[5]  Imaging of Plaintiff's left shoulder on

---

[5]Plaintiff testified she had back surgery over ten years ago and she had worked after the surgery for many years.  (D.E. 9-1, Pages 61-64 and 300-04); *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (Substantial evidence supported the ALJ's conclusion that Plaintiff could perform a wide range of sedentary work in part because the record reflected Plaintiff "was able to, and did, work for several years while suffering from ailments she now asserts are disabling."); *Hill v. Berryhill*, 718 F. App'x 250, 255 (5th Cir. 2018) (quoting *Vaughan*, 58 F.3d at 131).

July 14, 2020, showed an "irregular 25-50% articular surface partial thickness tear" and "[m]oderate AC joint arthropathy." (D.E. 9-1, Page 1227). On July 29, 2020, Plaintiff underwent left shoulder surgery. (D.E. 9-1, Pages 1107-09 and 1118-19). Being evaluated for physical therapy on August 3, 2020, Plaintiff was noted as having a decreased left shoulder range of motion, strength and stability as well as pain and stiffness. (D.E. 9-1, Pages 1232). As considered by the LAJ, throughout her physical therapy treatment from August to October 2020, Plaintiff was noted as ambulating without pain and no mention was made of Plaintiff using an assistive device. (D.E. 9-1, Pages 1235-43 and 1252-59). It was also continuously reported that her left shoulder pain was improving as was the functional strength and by the end of August, Plaintiff discontinued the use of a sling. (D.E. 9-1, Pages 1235-55). At the end of her physical therapy in October 2020, less than three months after her surgery, Plaintiff's left shoulder was noted as having a strength of 4/5, improved control with standing flexion, increased range of motion and reduced pain at a three out of ten. (D.E. 9-1, Pages 1235-36).

Citing to Dr. Crowley's records from May 17, 2021, the ALJ noted Plaintiff was reported to have a normal gait. (D.E. 9-1, Pages 1348). On May 21, 2021, Dr. Crowley noted Plaintiff had fallen over flowerpots the day before and had generalized right leg pain for which she was requesting pain medication. (D.E. 9-1, Page 1342). Imaging of her right leg showed no acute finding for right femur, mild degenerative changes of the right knee, no acute fracture, two fixation screws noted in right sacroiliac joint, moderate degenerative changes of the right hip, and soft tissues that were grossly unremarkable. (D.E. 9-1, Page

1345).  On July 10, 2021, a month before Dr. Crowley's assessment at issue, Plaintiff was treated at an emergency room for lower back pain.  (D.E. 9-1, Page 1266).  The ALJ noted Plaintiff had a normal back inspection and while muscle spasm and tenderness were evident, Plaintiff had a normal range of motion in her extremities which were not tender and she was noted as stable and improving with "[s]ymptoms much better."  (D.E. 9-1, Page 1266).  Upon her discharge the same day, Plaintiff was noted as "stable," having an "improved" status and being ambulatory.  (D.E. 9-1, Page 1272).  Dr. Crowley treated Plaintiff on July 19, 2021 for hypertension and lower back pain, administered an injection in her left hip for treatment of her lower back pain and refilled her pain medication.  (D.E. 9-1, Pages 1338-40).  Plaintiff was again treated by Dr. Crowley for lower back pain on August 2 and 12, 2021, and it was also noted that "disability forms to be filled out."  (D.E. 9-1, Pages 1495 and 1498).  Plaintiff's pain medication was continued and she was referred to a chronic pain specialist.  (D.E. 9-1, Pages 1495-97 and 1499).  On August 19, 2021, Dr. Crowley treated Plaintiff for a urinary tract infection and there was no notation of complaints of lower back pain although it was noted Plaintiff had a current pain medication prescription.  (D.E. 9-1, Pages 1488-1491).  He also treated Plaintiff on August 26, 2021, noting Plaintiff complained of lower back pain and foot swelling.  (D.E. 9-1, Page 1485).  Her pain medication was continued.  (D.E. 9-1, Page 1489).  Imaging of Plaintiff's abdomen/pelvis on August 26, 2021 showed an "[a]nterior lumbar interbody fusion at L4-5 and L5-S1 without hardware complication."  (D.E. 9-1, Pages 1521-22).  The same day, additional imaging of Plaintiff's lumbar spine showed it was "grossly similar" to her

January 15, 2020 imaging with "[m]ild to moderate multilevel degenerative discs and arthropathy." (D.E. 9-1, Page 23 and 1533-34).

The ALJ's reasons for discounting Dr. Crowley's assessment, combined with her review and analysis of the objective record, satisfy her duty under the record. Here, the ALJ properly evaluated Dr. Crowley's assessment, finding the severity of the limitations was not supported by his treatment records and was inconsistent with Plaintiff's medical records, including the objective medical evidence, as described above. Additionally, because it was a brief and conclusory opinion lacking explanatory notes accompanying diagnostic or specific clinical examinations, the ALJ properly discounted the assessment when it conflicted with the record. *Baker*, 2023 WL 2414011, at *14; *Stephens*, 2020 WL 7122860, at *8. The ALJ also considered the state agency physicians' opinions which were less restrictive. (D.E. 9-1, Pages 30-33).

Further, while Plaintiff testified at the hearing as to her limitations, including her use of a cane, the ALJ, based on the objective evidence, determined Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence. (D.E. 9-1, Pages 25-29); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (It is well settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference); *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (Subjective complaints must be corroborated, at least in part, by objective medical findings) (citations omitted). Additionally, the ALJ appropriately considered that Plaintiff was able to and did work for over ten years while suffering from

some of her alleged disabling ailments, including her lower back pain. *Vaughan*, 58 F.3d at 131; *Hill*, 718 F. App'x at 255. The ALJ further considered Plaintiff's reported daily activities throughout the time period at issue as described above, specifically that Plaintiff reported she could perform light housework, including taking the trash out, sweeping the floor, doing laundry and making the beds; babysit for her grandchildren; take care of her pets; take care of her own personal care without assistance; prepare food including sandwiches and frozen dinners; drive and ride in a car; could shop independently; pay bills and otherwise handle money; read; listen to music; watch television; visit with her children each week and talk on the phone. (D.E. 9-1, Pages 341-45). Additionally, as noted by the ALJ, Plaintiff received unemployment benefits in both 2020 and 2021, requiring her to certify that she was ready, willing and able to work which directly contradicts her testimony that she has been disabled since 2018. (D.E. 9-1, Pages 20, 319 and 324; D.E. 16, Page 9). Therefore, the undersigned recommends Plaintiff's first argument is without merit.

While Plaintiff next argues the ALJ failed to consider her lengthy work history when determining her credibility, the undersigned notes the ALJ made reference to Plaintiff's "excellent work history [with] SGA from 2006 to 2018" at the hearing. (D.E. 9-1, Page 65). The ALJ also discussed Plaintiff's many acquired work skills from her previous employment, both at the hearing and in the hearing decision. (D.E. 9-1, Pages 34 and 65-67). Further, "the Fifth Circuit has not expressly considered whether the ALJ is required to consider a plaintiff's lengthy work history as bolstering evidence of plaintiff's credibility." *Gonzalez v. Colvin*, NO. SA-16-CA-659-ESC, 2017 WL 2538595, at *7-8)

(W.D. Tex. June 12, 2017) ("The ALJ was not required to 'mechanically follow every guiding regulatory factor' in articulating reasons for declining to give Plaintiff's work history weight in his credibility analysis.") (citations omitted);  *Kovaleff v. Kijakazi*, No. 3:21-cv-360, 2022 WL 16823072, at *3 (S.D. Tex. Nov. 8, 2022) ("In the absence of any *binding* authority stating that the ALJ must specifically reference a claimant's work history in his findings [when assessing a claimant's credibility], I am unwilling to fault the ALJ for not doing so.") (emphasis in original).  Therefore, the undersigned recommends the ALJ appropriately assessed Plaintiffs' credibility and therefore, her second argument is also without merit.

Again, it is the task of the ALJ to weigh the evidence.  *Hames*, 707 F.2d at 165; *Chambliss*, 269 F.3d at 523.  "It is not the place of this Court to reweigh the evidence, or try the issue de novo, or substitute its judgment…[i]f supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed." *Id*.  Upon review, the ALJ's determination is based on substantial evidence.  The ALJ acted within her discretion in interpreting the evidence before her.  Even though the record illustrates Plaintiff suffers from several severe impairments, substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not prevent her from performing light work and/or sedentary as identified in the RFC during the period at issue.  Ultimately, the ALJ sufficiently explained why Dr. Crowley's opinion was unpersuasive and properly considered Plaintiff's ailments.  The ALJ, who questioned the Plaintiff at length, and thoroughly reviewed her treatment records, based her determination in part on Plaintiff's own reports and testimony regarding

her ability to perform certain tasks despite having claims of limitations as well as the medical evidence that demonstrated improvement in her conditions after several surgeries and control with medications.  Plaintiff's arguments request the Court to reweigh the evidence, try the issues de novo, or substitute the Court's judgment for that of the Secretary, all of which it cannot do.  *Greenspan*, 38 F.3d at 236.  Therefore, the undersigned recommends Plaintiff's arguments are without merit.

## VII.   CONCLUSION

For the reasons above, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED** (D.E. 12), the Commissioner's Motion for Summary Judgment be **GRANTED** (D.E. 16) and this case be **DISMISSED**.

ORDERED on June 1, 2023.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).